## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff,**

    **vs.**                  **No. 04-20006-01-02-JWL**

**Alverez McCullough and
Jami Mosley,**

      **Defendants.**

### MEMORANDUM & ORDER

A jury convicted defendants Alverez McCullough and Jami Mosley of conspiring to distribute or possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine and/or 50 grams or more of a mixture or substance containing a detectable amount of cocaine base as charged in Count 1 of the Second Superseding Indictment. Additionally, the jury found Mr. McCullough guilty of possessing with intent to distribute five hundred (500) grams or more of cocaine, possessing with intent to distribute marijuana, and possessing a firearm in furtherance of a drug trafficking crime as charged in Counts 3, 4 and 5, respectively. The jury found Ms. Mosley guilty of managing and controlling as an owner a residence for the storage and distribution of a controlled substance as charged in Count 6 of the Second Superseding Indictment.

The matter is before the court on defendants' motions for judgment of acquittal or, in the alternative, for new trial. As discussed more fully herein, the court grants in part and denies in part defendant Alverez McCullough's motion for judgment of acquittal. The motion

is granted with respect to the jury's finding that Mr. McCullough possessed a Ruger .45 caliber handgun in furtherance of a drug trafficking crime and is otherwise denied. The court denies Ms. Mosley's motion.

## I.      Background

Consistent with the standard governing a motion for new trial and a motion for judgment of acquittal, the facts in this section are set forth in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999) (noting that in reviewing these motions, the court views the evidence in the light most favorable to the government). Defendant Jami Mosley owns a home located at 3244 Cleveland in Kansas City, Kansas. Ms. Mosley and defendant Alverez McCullough have had an ongoing, personal relationship for years and they have three children together. Although Mr. McCullough owns a home elsewhere in Kansas City, Kansas, he frequently stayed with Ms. Mosley and their children at the 3244 Cleveland residence.

On June 9, 2003, Officers Sandra Carrera and George Simms of the Kansas City, Kansas police department were dispatched to Ms. Mosley's home to investigate a security alarm that had been activated. Neither Ms. Mosley nor Mr. McCullough were present at the residence at the time. Officer Carrera arrived at the scene first and, upon her arrival at the residence, she observed a white male (later identified as Richard Cook) walking out of the basement's sliding glass door and a white female (later identified as Heather Gordon) standing next to him. Ms. Gordon approached Officer Carrera as Officer Carrera was exiting her

2

vehicle and she advised Officer Carrera that the alarm had been an accident.   Officer Carrera asked the two individuals if they were the homeowners.   Ms. Gordon said that they were not the homeowners, but were there building a privacy fence for the owner.

Officer Carrera then asked Ms. Gordon for the name of the homeowner, but Ms. Gordon could not recall the homeowner's name.   Ms. Gordon then informed Officer Carrera that she knew how to contact the homeowner.   Ms. Gordon, using her cellular telephone, dialed a number and handed the telephone to Officer Carrera.   An unidentified man answered, and Officer Carrera asked him if he owned the home at 3244 Cleveland and the man responded that he was not the homeowner.   Ms. Gordon dialed another number and once again advised Officer Carrera that she had the homeowner on the telephone.   Officer Carrera took the telephone and spoke with a female who identified herself as Jami Mosley, the homeowner.   Ms. Mosley told Officer Carrera that the two individuals at her residence were there to build a privacy fence. Officer Carrera then advised Ms. Mosley that the home's security alarm had been activated and asked whether the two individuals had permission to be inside the residence.   Ms. Mosley refused to answer Officer Carrera's question and insisted that Officer Carrera return the phone to Ms. Gordon so that Ms. Mosley could speak with her.

At that point, Officer Simms arrived at the scene and Officer Carrera entered the residence to verify Ms. Gordon's statement that the homeowner had given them permission to use the restroom facilities in the basement of the home.   She  entered the basement through the sliding glass door (the same door she observed Mr. Cook exiting upon her arrival) to verify whether or not there was a bathroom in the basement and to see if there was evidence of a

break in.  Upon entering the basement area and making a left turn, Officer Carrera immediately observed a clear plastic bag containing what she believed to be a brick of marijuana located on top of a counter in plain view.  As Officer Carrera turned around to exit the residence, she observed an open trash bag that contained a larger quantity of what she believed to be bricks of marijuana.  Officer Carrera exited the residence and informed Officer Simms of her discovery.  The officers detained Ms. Gordon and Mr. Cook, contacted a supervising officer, and secured the residence.  Law enforcement officials obtained a warrant to search the residence and seized several guns, crack cocaine, powder cocaine, and marijuana from the residence.  Additional facts will be provided as they relate to the particular motions.

## II.      Standard

As to the motions for judgment of acquittal, the court must uphold the jury's verdict of guilty if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (quoting *United States v. Schluneger*, 184 F.3d 1154, 1158 (10th Cir. 1999)).  The court "must ask 'only whether taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find [defendant] guilty beyond a reasonable doubt.'"  *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001) (quoting *United States v. Springfield*, 196 F.3d 1180, 1184 (10th Cir. 1999)).  "Furthermore, 'the evidence necessary to support a verdict need not

conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'" *Id.* (quoting *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)).

As to the motions for a new trial, Federal Rule of Criminal Procedure 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed. R. Crim. P. 33. "A motion for new trial under Fed. R. Crim. P. 33 is not regarded with favor and should be granted only with great caution." *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir.1998) (further quotation and citation omitted). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

### III.    Motions for Judgment of Acquittal

Both defendants have filed motions for judgment of acquittal. The court begins with the motion filed by Mr. McCullough. In his motion for judgment of acquittal, Mr. McCullough first incorporates by reference, without elaboration, "each and every oral argument made to the Court" at the close of the government's case and at the close of all the evidence. These arguments, then, are denied for the reasons set forth by the court on the record during trial. Aside from the arguments that he has simply incorporated by reference, Mr. McCullough makes only two specific arguments in support of his motion for judgment of acquittal–one concerning the testimony of Richard Cook, the other concerning the sufficiency of the evidence with respect to Count 5. The court addresses both of these arguments in turn.

A.      *The Testimony of Richard Cook*

Mr. McCullough moves for judgment of acquittal with respect to Counts 1, 3 and 4 on the grounds that a witness who testified at trial, Richard Cook,[1] "admitted responsibility for the drugs in question" and, accordingly, Mr. Cook's testimony "created reasonable doubt per se."[2] This argument is easily rejected. Mr. McCullough is correct that Mr. Cook testified that the drugs found in Ms. Mosley's home were stored there by him and that Mr. McCullough had no knowledge of the drugs. The jury, however, was not obligated to believe Mr. Cook's testimony concerning the drugs; it was free to disbelieve Mr. Cook's testimony on that subject, as it obviously did. *See United States v. Dirden*, 38 F.3d 1131, 1142 (10th Cir. 1994).

The government, in fact, effectively impeached Mr. Cook's testimony in several respects. Specifically, the evidence showed that Mr. Cook is a homeless person who uses crack cocaine on a daily basis. He testified that he frequently does remodeling projects for various members of the McCullough family and that he is paid in cash for those projects (as he does not have any identification that would permit him to cash a check). When Mr. Cook was working on one of Mr. McCullough's properties, Mr. McCullough permitted Mr. Cook to spend the night there. Mr. Cook further testified that Mr. McCullough permitted Mr. Cook

---

[1]Richard Cook did not testify live at the trial of this case. Rather, the transcript of Mr. Cook's testimony from the previous trial of this case (a trial that resulted in a mistrial after the jury was unable to reach a unanimous verdict) was read to the jury during Mr. McCullough's case.

[2]Although Mr. McCullough references Counts 1, 2 and 3 in his motion, he apparently is seeking relief with respect to Counts 1, 3 and 4, as he was acquitted on Count 2 and his motion is clearly directed at all drug charges against him.

to drive one of his trucks; without that truck, Mr. Cook had no method of transportation.  The McCullough family was Mr. Cook's primary source of income.  Thus, the government demonstrated that Mr. Cook was beholden to Mr. McCullough and his family for money, shelter and transportation.  The government also suggested through its cross-examination of Mr. Cook that it was Mr. Cook who tripped the alarm at Ms. Mosley's house on June 9, 2003–an error that resulted in the discovery of the drugs and weapons.  For all of these reasons, the jury could have believed that Mr. Cook felt obligated to "cover" for Mr. McCullough.  The court, of course, cannot disregard the jury's assessment of a witness's veracity.  *United States v. Richard*, 969 F.2d 849, 857 (10th Cir. 1992).[3]

B.    *Mr. McCullough's Conviction for Possessing a Firearm in Furtherance of a Drug Trafficking Crime/Sufficiency of the Evidence*

Mr. McCullough also moves for judgment of acquittal with respect to Count 5, possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[4]  To establish a violation under this prong of section 924(c)(1), the government must establish both that Mr. McCullough "possessed" a firearm and that Mr. McCullough did so "in furtherance of" a drug trafficking crime.  *United States v. Avery*, 295 F.3d 1158, 1172

---

[3]In addition, Mr. Cook testified that he had cancer and could not afford medical treatment; while he denied the government's suggestion that he was taking the blame for the drugs in Ms. Mosley's home in order to go to prison to receive medical care, the jury could have believed that Mr. Cook was motivated, in part, by his desire for medical care.

[4]Although Mr. McCullough references Count 4 in his motion, his argument relates to the firearms charge and, thus, he clearly intended to reference Count 5.

(10th Cir. 2002).    In his motion for judgment of acquittal, Mr. McCullough does not challenge

the evidence supporting the "possession" element of section 924(c)(1).    Rather, he challenges

only the evidence supporting the "in furtherance of" prong.    Nonetheless, the court addresses

the "possession" issue because Mr. McCullough's general challenge to his convictions might

be construed to encompass this specific issue and, in any event, the issue could be subject to

review under the plain error doctrine.


1.      Possession

        In general, possession of contraband, whether it be drugs or a firearm, may be either

"actual" or "constructive."  *Id.* at 1177.    There is no dispute that Mr. McCullough did not have

actual possession of the firearms in this case.    The government relies on the theory of

constructive possession to sustain the conviction under Count 5.    Constructive possession

exists when a person "knowingly has ownership, dominion, or control over" the particular

object.    *Id.* (citations omitted).    In most cases, constructive possession over an object "may be

inferred if a defendant had exclusive possession of the premises" where the object is found,

but constructive possession may also be found in joint occupancy cases where the government

demonstrates "some connection or nexus between the defendant and the firearm or other

contraband."  *Id.* (citations omitted).    In the joint occupancy context, there must be additional

evidence supporting at least a plausible inference that the defendant had knowledge of and

access to the weapon or contraband.  *United States v. Mills*, 29 F.3d 545, 549-50 (10th Cir.

1994).    Circumstantial evidence may establish constructive possession.    *United States v.*

*Hishaw*, 235 F.3d 565, 571 (10th Cir.2000).

The jury found that Mr. McCullough possessed three firearms in furtherance of a drug

trafficking crime–a Mossberg 20 gauge shotgun; a DPMS .223 caliber semiautomatic assault

rifle; and a Ruger .45 caliber handgun.   All three weapons were found in Ms. Mosley's home–a

home that she shared with Mr. McCullough.   Because both Mr. McCullough and Ms. Mosley

were living in the residence at the time, the fact that the weapons were found in the house is

not sufficient to establish that Mr. McCullough had constructive possession of the weapons.

Rather, the government must establish a nexus between Mr. McCullough and each of the

weapons.

The evidence at trial supports the inference that Mr. McCullough had knowledge of and

access to the assault rifle and the shotgun.   Both weapons were found in a closet in the master

bedroom–a closet that is separate and distinct from the closet where Ms. Mosley keeps her

clothing and other personal affects.   The closet in which the two weapons were found contained

men's shoes and men's clothing.   Ms. Mosley testified that the multiple pairs of shoes in the

closet belonged to Mr. McCullough and that many of the clothes in the closet belonged to Mr.

McCullough.   According to Ms. Mosley, the rest of the clothes in the closet belonged to her

brother; there was no evidence presented at trial, however, that Ms. Mosley's brother ever

stayed at her house or otherwise had occasion to visit Ms. Mosley's house.   Moreover, the

weapons were not hidden in the closet.   In fact, they were both in plain view. The assault rifle

was lying in its case on the closet floor and the case was lying open with the assault rifle fully

displayed.  The shotgun was located on the foremost portion of the top shelf of the closet such that part of the gun was peeking over the shelf.  Clearly, a rational jury could have concluded that Mr. McCullough had knowledge of and access to these two weapons.

However, the evidence presented at trial does not support the jury's finding that Mr. McCullough "possessed" the Ruger .45 caliber handgun as the government has not shown a sufficient nexus between Mr. McCullough and this weapon.  Unlike the other weapons that were found in Mr. McCullough's own closet, the handgun was found in the kitchen–a multi-purpose room that was used by a variety of individuals, not just Mr. McCullough.  While there was evidence that Mr. McCullough engaged in drug transactions in the kitchen, including the cooking of cocaine into cocaine base, it is reasonable to infer that the kitchen was also used for cooking food and that other individuals, including Ms. Mosley, engaged in those activities.  In fact, the handgun was found in a kitchen cabinet on top of a sack of potatoes.  Although drugs were found in the kitchen, no drugs were found in the cabinet containing the handgun.  Similarly, although baggies with Mr. McCullough's fingerprints were found inside a  "cocaine base cooking kit" that was discovered on the kitchen counter, nothing about the proximity between those baggies and the handgun in the cabinet suggests a nexus between the items.  Finally, none of the government's witnesses testified that they had seen Mr. McCullough with that particular make of gun.

Simply put, there is nothing in the record to support the notion that Mr. McCullough had knowledge of the gun found in the kitchen cabinet.  Under *Mills*, then, the jury's finding that Mr. McCullough possessed this gun cannot be upheld.  29 F.3d at 549-50 (a conviction

based upon constructive possession in a joint occupancy setting will be upheld only when there is some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the firearm); *see also United States v. Pahulu*, 2004 WL 1941312, at *2 (10th Cir. Sept. 1, 2004) (government failed to establish that defendant constructively possessed shotgun uncovered in jointly occupied vehicle; evidence was insufficient to establish requisite nexus between defendant and the firearm).

2.      "In Furtherance Of"

According to Mr. McCullough, the evidence presented at trial was insufficient to support a conviction on Count 5 because none of the government's witnesses indicated that any firearms were used by Mr. McCullough in a threatening manner during a drug transaction.  The "in furtherance of" element of § 924(c) requires the government to show that possession of the firearm "furthered, promoted or advanced" the drug trafficking crime. *United States v. Jenkins*, 313 F.3d 549, 559 (10th Cir. 2002) (citing *United States v. Avery*, 295 F.3d 1158, 1175 (10th Cir. 2002)).   Relevant factors include "the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to the drugs or drug profits, and the time and circumstances under which the firearm is found."  *See id.* (citing *United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir. 2001)).[5]

---

[5]A defendant, then, may possess a firearm in furtherance of a drug trafficking crime without using the firearm in a threatening manner.

11

Aside from the fact that the weapons were easily accessible, as explained above, additional evidence supports the conclusion that Mr. McCullough used the shotgun and assault rifle in furtherance of a drug trafficking crime. Both weapons were found in the master bedroom, a room where officers also uncovered marijuana. Both weapons were loaded. Hundreds of thousands of dollars worth of drugs, including cocaine, were found in the house. Taken as a whole, this evidence easily supports a finding that Mr. McCullough intended to keep these firearms "available for use if needed during a drug transaction," *see Basham*, 268 F.3d at 1208, and that his possession of the firearms was in furtherance of a drug trafficking crime. *See Jenkins*, 313 F.3d at 559 (upholding conviction under § 924(c) in part because witness testified that guns were displayed in the same room of the defendant's house where crack cocaine was kept); *United States v. Lott*, 310 F.3d 1231, 1247 (10th Cir. 2002) (where firearm is present in the same premises as drugs or drug transactions, key is whether the weapon is "strategically located so that it is quickly and easily available for use"); *Avery*, 295 F.3d at 1180 (upholding conviction under § 924(c) where weapons were found in home from which defendant sold drugs; most weapons were found in defendant's bedroom, where agents also found drugs; all weapons were loaded).

C.    *Mr. McCullough's Conspiracy Conviction/Sufficiency of the Evidence*

Finally, Mr. McCullough generally contends that the evidence at trial was insufficient to support his conviction for conspiracy as charged in Count 1. The court readily concludes that ample evidence was introduced at trial from which the jury could find the essential

elements of the conspiracy charged beyond a reasonable doubt.   To obtain a conspiracy conviction, the government must prove that: (1) there was an agreement to violate the law; (2) the defendant knew the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; and (4) interdependence existed among the coconspirators.   *United States v. Hanzlicek*, 187 F.3d 1228, 1232 (10th Cir. 1999) (citing *United States v. Ailsworth*, 138 F.3d 843, 850 (10th Cir. 1998)).   "The government may prove these elements by direct or circumstantial evidence."   *Id.* (citing *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992)).

Viewed in the light most favorable to the government, the evidence at trial demonstrated that Mr. McCullough and Ms. Mosley agreed to use the 3244 Cleveland  residence for the purpose of obtaining, storing and distributing narcotics.   Mr. McCullough personally sold marijuana and cocaine to testifying witnesses at the 3244 Cleveland residence on multiple occasions (he enjoyed free access to the residence at all times) and his fingerprints were found on bags located inside a "cocaine base cooking kit" discovered at the residence.   Moreover, Mr. McCullough was residing at 3244 Cleveland at the time large quantities of cocaine, marijuana, weapons and U.S. currency were discovered at that residence.   In that regard, his belongings were found throughout the residence and government witnesses placed Mr. McCullough at the residence the day that the search warrant was executed.   In short, a rational juror could have readily found beyond a reasonable doubt that Mr. McCullough was guilty of the conspiracy charged in Count 1.

13

  D.  *Mr. McCullough's Conviction for Possessing with Intent to Distribute Cocaine and Marijuana*

  Mr. McCullough next asserts that the evidence at trial was insufficient to support his convictions for possessing with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1).   To sustain a conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that a defendant: "(1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance."   *United States v. Jenkins*, 175 F.3d 1208, 1215-16 (10th Cir. 1999). For purposes of this test, possession may be either actual or constructive. *Id*. at 1216.

  Because it is undisputed that the cocaine and marijuana were not in Mr. McCullough's actual possession, the court analyzes whether Mr. McCullough had constructive possession over the drugs.   Constructive possession occurs when a person knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found. *Id.* (citing *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997)).   In cases involving joint occupancy of a place where drugs are found, mere control or dominion over the place in which the drugs are found is not enough to establish constructive possession.   *United States v. Scull*, 321 F.3d 1270, 1284 (10th Cir. 2003) (citing *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir.2000). Rather, the government is required to present direct or circumstantial

evidence to show some connection or nexus individually linking the defendant to the drugs. *Id*. (citation omitted). The government has satisfied these standards.[6]

The court's conclusion is guided by several Tenth Circuit cases. The first case is *United States v. Avery*, 295 F.3d 1158 (10th Cir. 2002). There, the defendant challenged his conviction for possession with intent to distribute cocaine and cocaine base. *See id.* at 1179. The drugs were found in the bedroom of a home that the defendant shared with his girlfriend. The bedroom also contained weapons, a set of scales, two boxes of sandwich baggies and a safe containing large quantities of cash. *See id.* The Tenth Circuit upheld the defendant's conviction despite the fact that the defendant's girlfriend also occupied the bedroom, in large part because the defendant admitted that he had sold cocaine from the residence. *See id.* That admission, coupled with the evidence uncovered in the bedroom, was sufficient to allow a reasonable jury to conclude that the defendant (1) knew about the cocaine and cocaine base in the home; (2) exercised dominion and control over the cocaine and cocaine base; and (3) intended to sell the cocaine and cocaine base. *Id.*[7]

In *United States v. Jenkins*, 175 F.3d 1208 (10th Cir. 1999), the defendant challenged the sufficiency of the evidence with respect to his conviction for possession with intent to

---

[6]While this conclusion may seem at odds with the court's conclusion that Mr. McCullough did not "possess" the Ruger .45 caliber handgun located in the kitchen, the difference stems from the Circuit's seemingly more liberal interpretation of "constructive possession" in the context of narcotics as opposed to firearms.

[7]In this case, sufficient quantities of marijuana and cocaine were found for the jury to infer that the drugs were intended for distribution rather than personal use. Thus, the only issue is whether Mr. McCullough possessed the drugs in question.

15

distribute cocaine base and marijuana.  *Id*. at 1215.  In that case, cocaine base and marijuana were found throughout the home and backyard of the residence of the defendant's girlfriend –a home where the defendant did not reside full-time but where he frequently visited and often spent the night.  *See id.* at 1216.  According to the Tenth Circuit, the defendant's unlimited access to the home, his frequent visits to the home and the discovery of mail addressed to the defendant at his girlfriend's home "readily" suggested that defendant exercised sufficient dominion and control over his girlfriend's residence.  *See id.*  The Circuit further stated that that same evidence supported an inference that defendant constructively possessed the cocaine base and marijuana.  *See id.* at 1216-17.

In addition, the Circuit held that the defendant constructively possessed cocaine base discovered in a hole in the ground (covered with a piece of particle board) nearly 40 feet from the back of his girlfriend's residence, in an area accessible to many people, including the occupants of a nearby fraternity house.  *See id.* at 1216.  According to the Circuit, evidence that the defendant had sold crack cocaine from the residence as well as the discovery of cocaine base in a night stand next to the bed in which defendant was lying at the time the search warrant was executed was sufficient to link the defendant to the drugs in the backyard.  *See id.* With respect to the marijuana found scattered throughout the house, the Circuit connected the defendant to the marijuana in light of evidence that the defendant had sold marijuana at the residence and that some marijuana was found in the night stand next to the bed in which defendant was lying at the time the warrant was executed.  *See id.* at 1217.

Similarly, in *United States v. Scull*, 321 F.3d 1270 (10th Cir. 2003), the Tenth Circuit found sufficient evidence to sustain the defendant's conviction for possession with intent to distribute crack cocaine.  *In Scull*, agents discovered crack cocaine the spare bedroom of Mr. Scull's home, a home that he shared with his wife and children.  *See id.* at 1283-84.  At the time the drugs were found, one of the defendant's friends was staying in the spare room.  *See id.* at 1284.  In sustaining the conviction, the Tenth Circuit concluded that the government had presented sufficient evidence to establish a nexus between the defendant and the drugs found in the spare room because the defendant had access to the room, evidence pulled from the defendant's trash indicated that crack cocaine was being manufactured in his home and the defendant had sold crack cocaine to an agent. *See id.*

With these cases in mind, the court readily concludes that the evidence presented by the government in this case was sufficient to show that Mr. McCullough constructively possessed the drugs discovered in Ms. Mosley's home.  As described earlier, Mr. McCullough had unlimited access to the 3244 Cleveland residence.  His personal effects were found there and he was a frequent visitor, both during the day and overnight.  Significantly, marijuana and cocaine were found in a Nike shoe box that also contained sandwich baggies bearing Mr. McCullough's fingerprints and white powder residue, a broken glass beaker, and a digital scale covered with white powder residue.  As the marijuana and cocaine were found in a box containing baggies with Mr. McCullough's fingerprints, a reasonable jury could infer that the marijuana and cocaine in the box belonged to Mr. McCullough.  There was also overwhelming

evidence presented at trial that Mr. McCullough sold drugs from the 3244 Cleveland residence.

Under the cases described above, the evidence of Mr. McCullough's drug sales, coupled with the drugs found in the box with the baggies bearing his fingerprints, is sufficient to link Mr. McCullough to the other quantities of marijuana and cocaine found in the house. *See Jenkins*, 175 F.3d at 1216 (link to crack cocaine found in hole in backyard established in large part because crack cocaine found in night stand next to defendant's bed and defendant sold drugs at the residence); *Avery*, 295 F.3d at 1179 (link to cocaine and cocaine base established because defendant admitted he sold cocaine from the residence and in light of other items found in bedroom, including scales, cash, weapons and sandwich baggies).

In sum, the court concludes that the evidence at trial was sufficient to sustain Mr. McCullough's convictions of possession with intent to distribute both cocaine and marijuana.

E.    *Ms. Mosley's Motion for Judgment of Acquittal*

The court turns, then, to Ms. Mosley's motion for judgment of acquittal.  In her motion, Ms. Mosley makes two arguments.  First, she contends that a rational jury could not have convicted Ms. Mosley of managing and controlling as an owner a residence for the storage and distribution of a controlled substance as charged in Count 6 while acquitting her of possession with intent to distribute as charged in Counts 2, 3 and 4.  Essentially, then, Ms. Mosley contends that the verdict is inconsistent.  Second, Ms. Mosley contends that the evidence at trial was insufficient to support her conviction under Count 1.

18

1.      Inconsistent Verdict

The court easily rejects Ms. Mosley's first argument.  In order to convict Ms. Mosley of the crime set forth in Count 6, the jury was required to find beyond a reasonable doubt that that Ms. Mosley (1) managed or controlled a residence; (2) as an owner; and (3) knowingly and intentionally made that residence available for the purpose of unlawfully storing and distributing a controlled substance.  *See United States v. Prentiss*, 206 F.3d 960, 975 (10th Cir. 2000).  In other words, the jury, to convict Ms. Mosley of the crime set forth in Count 6, was not required to find that Ms. Mosley herself possessed or distributed a controlled substance, so long as she maintained a place for that purpose.  The jury's verdict, then, is entirely consistent.  *See United States v. Ford*, 371 F.3d 550, 554 (9th Cir. 2004) (Subsection (a)(2) of 21 U.S.C. § 856 requires that the manager or controller of the property make it available to others, knowing that the proscribed use will occur, but does not require that the manager or controller have the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance); *see also United States v. Verners*, 53 F.3d 291, 297 n.4 (10th Cir. 1995).[8]

2.      Conspiracy Conviction/Sufficiency of the Evidence

---

[8]Even if the verdict were inconsistent, which it is not, the court would not enter a judgment of acquittal or grant a new trial as the evidence is sufficient to support the conviction on Count 6.  *See United States v. Morehead*, 959 F.2d 1489, 1502-03 (10th Cir. 1992) (citing *United States v. Powell*, 469 U.S. 57 (1984)).

Like Mr. McCullough, Ms. Mosley argues that the evidence at trial was insufficient to convict her of the conspiracy charged in Count 1. According to Ms. Mosley, the only evidence linking Ms. Mosley to the drugs in question is that the drugs were found in the home that she owned. Ms. Mosley also highlights that none of the cooperating witnesses testified that Ms. Mosley had anything to do with the sale of drugs. However, Ms. Mosley need not personally sell or package drugs to be an integral member of the drug conspiracy. It is enough that Ms. Mosley knowingly provided a place for Mr. McCullough to conduct drug transactions and to store narcotics. *See U.S. v. Morillo*, 158 F.3d 18, 23 (1st Cir. 1998) (when a defendant has knowledge of a drug trafficking conspiracy, willfully allowing others to use a dwelling for the drug distribution activity is sufficient to support a conspiracy conviction); *accord United States v. Grimaldo*, 214 F.3d 967, 976 (8th Cir. 2000) (substantial evidence supported conspiracy conviction where evidence sustained conclusion that defendant knowingly allowed his apartment to be used for the storage and distribution of drugs); *United States v. Ramirez*, 45 F.3d 1096, 1102-03 (7th Cir. 1995) (admission of evidence concerning marijuana found in defendant's apartment was proper because the evidence was relevant to the government's claim that defendant participated in the conspiracy by allowing his apartment to be used as a "safe house" where the drug transaction could be consummated and it evidenced defendant's role as a facilitator who provided a safe location for the drug transaction–a location obviously used to facilitate other drug transactions as well); *United States v. Angulo-Lopez*, 7 F.3d 1506, 1511 (10th Cir. 1993) (identifying owners of safe houses as participants in cocaine

20

conspiracy); *United States v. Angulo-Lopez*, 1993 WL 430340, at *1 (10th Cir. Oct. 26, 1993) (owners of safe houses had an integral role in conspiracy).

The evidence at trial demonstrated that Ms. Mosley provided Mr. McCullough with unlimited access to her home and that the vast majority of drug transactions conducted by Mr. McCullough occurred at Ms. Mosley's home–the 3244 Cleveland residence.   Moreover, the evidence at trial was sufficient for a rational jury to conclude beyond a reasonable doubt that Ms. Mosley knew that Mr. McCullough was using her home to conduct drug transactions.   In that regard, Edwin Carvin, one of the government's cooperating witnesses, testified that on one occasion when he was at the 3244 Cleveland residence purchasing a kilogram of cocaine from Mr. McCullough he saw a pregnant African-American female in the house and heard her attending to small children.   It was entirely reasonable for the jury to infer that this woman was Ms. Mosley, as other testimony at trial demonstrated that Ms. Mosley was pregnant during the relevant time frame and that she and Mr. McCullough had several small children who lived at the 3244 Cleveland address.

During this transaction, Mr. Carvin was accompanied by Arnold Moore and Mr. McCullough was accompanied by two Hispanic males.   The individuals went into Ms. Mosley's kitchen to cook cocaine into cocaine base.   A rational jury could readily conclude that Ms. Mosley, in close enough proximity that Mr. Carvin saw her pass through a hallway, knew that these individuals were in her kitchen conducting a drug transaction.   In fact, testimony at trial demonstrated that the process of cooking "crack" cocaine produced a distinct odor.   In light

21

of this evidence, the jury could easily conclude that Ms. Mosley must have known that crack was being cooked in her own kitchen.

In addition to this evidence, the sheer number of transactions occurring at Ms. Mosley's residence during the relevant time frame, coupled with the fact that drugs were discovered in the bedroom that Ms. Mosley shared with Mr. McCullough, is more than sufficient to permit a jury to conclude beyond a reasonable doubt that Ms. Mosley knowingly permitted Mr. McCullough to use her residence as a place to conduct drug transactions.   In short, the evidence at trial was sufficient to support a conspiracy conviction against Ms. Mosley.

## IV.   Motions for New Trial[9]

Mr. McCullough raises three arguments in support of his motion for a new trial. Specifically, he contends that certain statements made by the prosecutor during closing argument warrant a new trial; that the court erroneously admitted evidence obtained through an unlawful search; and that the court erred in failing to grant a mistrial after the only African-American member of the jury became ill during deliberations.   The court addresses (and ultimately rejects) each argument in turn.

---

[9]While Ms. Mosley has moved for a new trial as an alternative to her motion for judgment of acquittal, she has not set forth any separate or independent grounds for a new trial. She relies only on her arguments in support of her motion for judgment of acquittal concerning the sufficiency of the evidence.   As the court has rejected those arguments, so must the court reject Ms. Mosley's request for a new trial.

A.     *Prosecutor's Statements During Closing Argument*

Mr. McCullough contends that a new trial is warranted in light of certain statements made by the prosecutor during the rebuttal portion of her closing argument.   Because Mr. McCullough's counsel did not object to the prosecutor's remarks at trial, the court reviews those remarks for plain error.   *See United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998).   Regardless of the standard of review, however, the court would find no error with respect to the remarks made by the prosecutor.

According to Mr. McCullough, the prosecutor made an improper or erroneous remark concerning defendant's decision to have Mr. Cook's testimony presented to the jury through a transcript rather than calling Mr. Cook as a live witness when, in fact, the government knew that defendant could not call Mr. Cook as a live witness because he had invoked his Fifth Amendment rights.[10]   The transcript of the prosecutor's rebuttal remarks, however, does not support Mr. McCullough's argument.   In that regard, the prosecutor, during her rebuttal portion of her closing argument, made the following remark about Mr. Cook's testimony and, more specifically, about the manner in which Mr. McCullough's counsel described Mr. Cook's testimony to the jury during his closing argument:

> Let's talk about Richard Cook and you were told repeatedly by Mr. Sousley that Richard Cook told you this and Richard Cook told you that.   Richard Cook didn't tell you anything.   He wasn't here.   His transcript was read to you but he wasn't here.

---

[10] *See supra* note 1.

These remarks do not suggest that Mr. McCullough could have or should have called Mr. Cook as a live witness. At the most, the remarks reflect an attempt by the prosecutor to clarify statements made by Mr. McCullough's counsel during his closing argument. In short, nothing improper was suggested by the prosecutor's remarks concerning the testimony of Mr. Cook and Mr. McCullough was in no way prejudiced by these remarks. *See United States v. Dean*, 76 F.3d 329, 334-35 (10th Cir. 1996) (prosecutor is afforded "considerable latitude" in rebuttal remarks when remarks are invited by defense counsel's "opening salvo" and prosecutor is simply attempting to "right the scale").

Mr. McCullough next contends that the prosecutor improperly shifted the burden of proof to Mr. McCullough by demanding during her closing argument that Mr. McCullough explain to the jury why his fingerprints were found on sandwich baggies containing drugs. Specifically, the prosecutor stated:

> Even if you were to believe the whole–this poor homeless crack addict that Mr. McCullough uses planted all these things all these hundreds of drugs all over the house if he did that why are there fingerprints on the Baggies? I would like [Mr. McCullough's counsel] to explain that one to you. Let's see if he will.

Defendants contend that the prosecutor's statements warrant a new trial. The court disagrees, again reviewing the remarks under the plain error doctrine as defense counsel did not object to them at trial. *See United States v. Merryman*, 630 F.2d 780, 789 (10th Cir. 1980) (failure to object to closing remarks at trial makes it "difficult, if not impossible, to predicate reversible error" on the remark).

24

The prosecutor's remarks concerning the defendant's fingerprints on the sandwich baggies were entirely proper. As the Tenth Circuit has held, the attorney prosecuting the case on behalf of the government is authorized to respond in closing argument to exculpatory arguments made by the defendant. *See id.* Here, the prosecutor was responding to Mr. McCullough's exculpatory evidence–his theory that Mr. Cook had stored all of the drugs found at the residence and that all of the drugs belonged to Mr. Cook. Moreover, it is proper to comment upon the failure of the defense to produce certain evidence (here, an explanation of how the defendant's fingerprints appeared on the baggies) so long as such evidence can be solicited other than from the mouth of the defendant. *See United States v. Mayes*, 917 F.2d 457, 466 (10th Cir. 1990). Mr. McCullough could have explained to the jury why his fingerprints were on the baggies through the testimony of his co-defendant, Jami Mosley, who testified at trial and who resided in the home where the baggies were found.

Finally, the court properly instructed the jury regarding the burden of proof, the credibility of witnesses, the limited significance to be attached to the closing arguments, and its need to consider the instructions as a whole. *See United States v. Toro-Pelaez*, 107 F.3d 819, 828 (10th Cir. 1997) (closing remarks that allegedly shifted burden of proof were mitigated by numerous instructions). Given the totality of the circumstances, then, the court cannot say that the jury would have reached a different result in the absence of the remark. *See id.* As Mr. McCullough has not shown that he was prejudiced by the remark, the court finds no plain error. *See id.*

B.      *Admission of Evidence Obtained Through Unlawful Search*

Mr. McCullough next asserts that a new trial is warranted because the court admitted evidence at trial that was obtained pursuant to an illegal search of defendant Jami Mosley's residence.   Mr. McCullough, in a motion to suppress filed prior to trial, advanced the same arguments that he now makes concerning the unlawfulness of the search.   The court, in a memorandum and order dated May 15, 2004, denied the motion to suppress and concluded that the search of the residence was constitutional.   The court, then, need not reiterate its analysis here, particularly as Mr. McCullough does not contend that the evidence at trial concerning the circumstances surrounding the search differed in any way from the evidence presented at the suppression hearing.[11]

---

[11]While Mr. McCullough asserts that the testimony of the government's own witness at trial, Heather Gordon, demonstrated that the police had been informed as to the nature of the presence of Ms. Gordon and Mr. Cook and, thus, there was no reason to enter the residence, the court considered this evidence in the context of the suppression hearing, as Officer Carrera testified at the hearing–just as Ms. Gordon did at trial–that Ms. Gordon had advised her that she and Mr. Cook were building a privacy fence for the homeowner and that the homeowner had given them permission to use the restroom in the home's basement.   The only minor variation in the evidence presented at trial is that Heather Gordon (who did not testify at the suppression hearing) testified that in her discussion with Officer Carrera, she identified the homeowner as Jami Mosley, whereas at the suppression hearing, Officer Carrera testified that Ms. Gordon could not identify the homeowner by name.   At trial, however, Officer Carrera maintained that Ms. Gordon could not identify the homeowner by name and the court believes the testimony of Officer Carrera as opposed to Ms. Gordon's account of the conversation.   Thus, even if Ms. Gordon had testified at the suppression hearing that she had identified the homeowner by name in her conversation with Officer Carrera, that testimony would not have altered the court's analysis in any respect.

In the alternative, Mr. McCullough argues that even if the search of the residence was lawful, it was error for the court to instruct the jury that the search was lawful. The court's Instruction No. 34 stated as follows:

> During the trial of this case, you have heard evidence concerning the June 9, 2003 search of the residence at 3244 Cleveland. In a prior proceeding, the court concluded that the search of the residence was lawful and that the officers who conducted the search of the residence on June 9, 2003 acted within the confines of the law at all times during the search. Thus, the fact of the search itself or the manner in which the search was conducted should not enter into your deliberations in any respect.

Mr. McCullough, however, did not object to the court's instruction. In fact, he expressly stated that he had no objection to the instruction so long as he was not waiving his right to appeal the court's decision concerning the motion to suppress. Thus, the court reviews the instruction for plain error, *see United States v. Wonschik*, 353 F.3d 1192, 1197 (10th Cir. 2004), and finds none.

According to Mr. McCullough, the court's instruction "placed a veil of legitimacy over the actions of the police" in direct contrast to Mr. McCullough's defense that the "police did not do their job in the handling of the entry, the search, the evidence, and the follow-up investigation." As an initial matter, the court's instruction, contrary to defendant's argument, plainly does not address the police's handling of the evidence or the "follow-up investigation." Moreover, while the instruction does address the entry and search, it properly clarifies that the entry and search were lawful and that the court had decided that issue in a prior proceeding. Such an instruction was entirely appropriate and even necessary in light of Mr. McCullough's continued efforts throughout the trial to create a question about the legality of the search–an

27

issue that was clearly not for the jury to resolve.  The instruction in no way undermines any proper defense (*i.e.*, a defense other than one suggesting that the search was unlawful) advanced by Mr. McCullough.


C.      *Replacement of Juror with Alternate During Deliberations*

Finally, Mr. McCullough contends that he is entitled to a new trial based on the court's failure to grant a mistrial after the only African-American juror became ill, was unable to continue deliberations with the jury, and the court replaced the juror with an alternate.  Mr. McCullough, however, did not move for a mistrial at the time the court excused the juror and, in fact, he expressly advised the court that he had no objection to the court's approach.  Thus, the court analyzes Mr. McCullough's argument under the plain error doctrine.  *See United States v. Wonschik*, 353 F.3d 1192, 1197 (10th Cir. 2004); Fed. R. Crim P. 52(b).  Mr. McCullough can establish no such error here.  Significantly, the approach adopted by the court is expressly permitted in the pertinent federal rules, *see* Fed. R. Crim. P. 24(c)(3) (court may replace a regular juror during deliberations with an alternate and court shall instruct the jury to begin its deliberations anew), and the court strictly complied with the requirements of Rule 24(c).

With respect to Mr. McCullough's suggestion that a mistrial was appropriate because the juror who was replaced was the only African-American member of the jury, that argument is also easily rejected–regardless of the application of the plain error doctrine.  Again, the court need look no further than Rule 24(c), which provides that "[a]n alternate juror, in the

28

order called, shall replace a juror who becomes or is found to be unable or disqualified to perform juror duties." Fed. R. Crim. P. 24(c)(1).  In this case, the jury began deliberating on Friday, November 19, 2004.  The jury did not reach a verdict that day and returned on Monday, November 22, 2004 to resume deliberations.  That morning, the courtroom deputy received a phone call from the sole African-American member of the jury advising that she had the stomach flu and would be unable to come to the courthouse on that day.  Over the government's objection, the court sent the jury home for the day in the hopes that the sick juror would be able to resume deliberations the following day.  On Tuesday, November 23, 2004, the juror again contacted the courtroom deputy and advised that she was still suffering from the same symptoms and would not be able to come to the courthouse on that day.  At that point, the court determined that it was necessary to replace the juror with the first alternate and proceed with deliberations.

Given these circumstances, just cause existed for excusing the regular juror and replacing that juror with the first alternate.  The mere fact that the sole African-American member of the jury was replaced with a white alternate–without any evidence or suggestion that the court was making an affirmative attempt to alter the racial composition of the jury–does not warrant a mistrial or, at this juncture, a new trial.  *Compare United States v. Nelson*, 277 F.3d 164, 207 (2d Cir. 2002) (district court acted improperly by affirmatively attempting to alter racial composition of the jury) *with United States v. Edwards*, 188 F.3d 230, 237 (4th Cir. 1999) (noting lack of authority requiring a court to keep an individual on the jury because of the juror's race, despite the court's finding of just cause for excusing the juror pursuant to

Fed. R. Crim. P. 23(b)); *United States v. Nelson*, 102 F.3d 1344, 1350 (4th Cir. 1996) (two black jurors were replaced with two white jurors because of the black jurors' vacation plans; court found no basis to conclude that the district court's discretion, in the absence of any evidence or allegation that the court acted because of race in replacing jurors with alternates, should be exercised differently when it is considering for racially neutral reasons the replacement of black jurors); *and United States v. Little*, 1993 WL 501570, at *8 (6th Cir. Dec. 6, 1993) (replacement of black juror with white alternate juror did not constitute prejudicial error; reasonable cause existed for black juror's removal).

**IT IS THEREFORE ORDERED THAT** defendant Alverez McCullough's motion for judgment of acquittal and/or new trial (doc. #128) is granted in part and denied in part; defendant Jami Mosley's motion for judgment of acquittal and/or new trial (doc. #125) is denied.

**IT IS SO ORDERED** this 7th day of February, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge