IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-20006-01-JWL |
| ) | |
| ALVEREZ MCCULLOUGH, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

## **MEMORANDUM AND ORDER**

Defendant Alverez McCullough was convicted following a jury trial on multiple drug and weapons-related charges. The court sentenced Mr. McCullough to 260 months on the drug charges and a mandatory consecutive 10-year term on the firearms charge, for a total term of 380 months imprisonment. The Circuit affirmed Mr. McCullough's convictions and sentence. *See United States v. McCullough*, 457 F.3d 1150 (10th Cir. 2006). The court later reduced the defendant's sentence to 330 months based a reduction in his guideline range. The defendant is presently incarcerated at FTC Oklahoma City and his anticipated release date is July 7, 2028.

Recently, this court denied Mr. McCullough's motion for compassionate release because Mr. McCullough failed to show that he suffers from medical conditions that place him at an elevated risk of harm from COVID-19. Specifically, the court rejected Mr. McCullough's conclusory assertion that his status as a cancer survivor significantly

increases his risk of serious complications if he were to contract COVID-19.[1]  Thereafter, the Office of the Federal Public Defender entered an appearance on Mr. McCullough's behalf and Mr. McCullough filed another motion for compassionate release (doc. 288).  In this motion, Mr. McCullough now asserts that he suffers from chronic kidney disease, with mild to moderate loss of kidney function, as well as compromised immunity from cancer treatment.  Mr. McCullough also highlights his race, African-American, as a contributing factor that warrants early release.

     The government concedes that Mr. McCullough's medical conditions, particularly his chronic kidney disease, constitute extraordinary and compelling reasons sufficient for this court to consider early release under the statute.  Nonetheless, the government opposes the motion on the grounds that the § 3553(a) factors weigh against early release in light of the nature and seriousness of Mr. McCullough's offenses, to provide just punishment for those offenses and in light of serious misconduct engaged in by Mr. McCullough during the trial phase of this case.  The sole question before the court, then, is whether the § 3553(a) factors outweigh the risks to Mr. McCullough's health if he remains incarcerated for the nearly 8 years remaining on his sentence.  The court concludes in its discretion, for the reasons set forth below, that the risk to Mr. McCullough's health if he remains in custody is outweighed by the need for continued incarceration under the specific circumstances presented here.  The court, then, denies the motion for compassionate release.

---

[1] The court dismissed for lack of jurisdiction that aspect of the motion that sought relief under the CARES Act.

In its initial memorandum and order, the court did not address the applicable § 3553(a) factors because it readily found that Mr. McCullough had not shown that he suffers from medical conditions placing him at an elevated risk of harm from COVID-19. The court now finds that compassionate release would materially depart from an appropriate § 3553(a) sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the consideration of applicable § 3553(a) factors if court finds that extraordinary and compelling reasons warrant reduction). The § 3553(a) factors include (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6)).

Applying those factors here, the court declines to reduce Mr. McCullough's sentence. To begin, the court notes that a significant quantity of drugs was attributed to Mr. McCullough and numerous firearms were associated with Mr. McCullough's drug trafficking activity. The court at sentencing found that Mr. McCullough was accountable for more than 14 kilograms of cocaine, more than 182 grams of crack cocaine, and more than 145 kilograms of marijuana. The court imposed a two-level enhancement based on the jury's finding that Mr. McCullough acted as an organizer, leader, manager or supervisor.

3

But beyond the seriousness of Mr. McCullough's underlying crimes, Mr. McCullough, on two separate occasions in connection with this case, obstructed justice by conspiring to present false testimony. During the first trial of this case,[2] Mr. McCullough presented the testimony of Richard Cook, a homeless person who used crack cocaine on a daily basis. Mr. Cook testified that he was solely responsible for the drugs attributed to Mr. McCullough and swore under oath that Mr. McCullough had no knowledge of those drugs. Shortly thereafter, Mr. Cook was indicted for perjury and later admitted that he lied on the stand in an effort to take responsibility for the actions of Mr. McCullough. During the second trial of the case, Mr. McCullough again called Mr. Cook as a witness. After Mr. Cook invoked his fifth Amendment right against self-incrimination and declined to testify, Mr. McCullough presented Mr. Cook's testimony from the first trial pursuant to Federal Rule of Evidence 804(b)(1). In connection with Mr. McCullough's sentencing, evidence was presented that Mr. Cook had discussed his false testimony with Mr. McCullough prior to the first trial.

After the second trial of this case but before sentencing, Mr. McCullough filed a motion for new trial based on Mr. McCullough's assertion that five cooperating witnesses who testified on behalf of the government and against Mr. McCullough had conspired to provide false testimony at trial in order to receive downward departures and that inmates at the Corrections Corporation of America (CCA) were buying and selling information about Mr. McCullough's case so that other inmates could "jump on" the case and obtain

---

[2] The first trial of the case resulted in a mistrial after the jury hung on all counts.

downward departures. After holding a two-day evidentiary hearing on that motion, the court concluded that no such conspiracy existed and that, in fact, Mr. McCullough conspired to present false testimony in support of his motion for new trial and carried out that scheme at the evidentiary hearing before the court.

As the court explained during Mr. McCullough's sentencing, the court sentenced Mr. McCullough at the mid-point of the advisory range based in part on the disrespect for the law that Mr. McCullough demonstrated throughout the case, including by suborning the perjured testimony of Mr. Cook and by procuring false testimony in support of his motion for new trial. The court emphasized at sentencing that Mr. McCullough had willfully attempted to obstruct and impede the administration of justice. Thus, Mr. McCullough repeatedly refused to accept responsibility for his crimes, continued to maintain his innocence long after his conviction despite overwhelming evidence of guilt, and engaged in a concerted effort to avoid having to pay for his crimes. Thus, the guideline range for the drug convictions at that time (235 to 293 months) reflected a two-level enhancement for obstruction of justice and Mr. McCullough was sentenced to the midpoint of that range (260 months). As the court explained, that enhancement plus a sentence at the midrange point was necessary to punish Mr. McCullough for both the subornation of perjury from Mr. Cook as well as his efforts to present false testimony in connection with the motion for new trial. Lastly, the court considered at sentencing the "callous" manner in which Mr. McCullough treated his codefendant, the mother of his three children. As explained by the court, Mr. McCullough

      could have secured her freedom and given his children the opportunity to grow up with their mother by pleading guilty to the crimes charged, of which he clearly is guilty. The government was willing to dismiss the indictment as to Ms. Mosley in exchange for Mr. McCullough's guilty plea at one stage of the proceedings. He refused and, in doing so, has ensured that Ms. Mosley will receive a sentence of at least 10 years in prison and that three of his children will be raised by someone other than their natural parents. This aspect of Mr. McCullough's character is also a factor in the court's determination of a reasonable sentence.

Doc. 240, at 59-60.

In light of these unique circumstances, the court agrees with the government that a reduction to time-served at this point in Mr. McCullough's sentence would constitute a significant and unjustified windfall. He has approximately 93 months remaining on his sentence. In other words, Mr. McCullough has served roughly 70 percent of his 330-month term. Mr. McCullough's release from custody would be inconsistent with the need to provide just punishment and the need to promote respect for the law and would fail to reflect the seriousness of his offenses, including his efforts to obstruct justice during the first trial of this case and in connection with trying to obtain a new trial. A reduction in Mr. McCullough's sentence to time served would constitute a significant, unwarranted, multi-level downward departure from his original sentence.

In short, the court finds that Mr. McCullough's 330-month sentence remains sufficient but not greater than necessary to serve the purposes of sentencing. *See United States v. Thomas*, 2020 WL 5640745, *4 (N.D. Ind. Sept. 22, 2020) (regardless of "extraordinary and compelling" analysis, court found that § 3553(a) factors "overwhelmingly" supported continued incarceration where defendant devoted adult life to "flooding the streets with cocaine"); *United States v. Ware*, 2020 WL 5524869, at *4

6

(E.D. Tex. Sept. 14, 2020) (§ 3553(a) factors did not support release where defendant was engaged in large methamphetamine trafficking conspiracy, obstructed justice while on bond, and tampered with the testimony of a key witness); *United States v. Abdul-Wahhab*, 2020 WL 5440587, at *4 (S.D. Fla. Sept. 10, 2020) (reduction of sentence by over six years would not serve the goals of § 3553(a) in context of compassionate release motion where defendant engaged in "problematic conduct" after arrest including obstructing justice); *United States v. Kolodesh*, 2020 WL 5292145, at *3 (E.D. Pa. Sept. 4, 2020) (compassionate release not warranted where defendant was not remorseful for criminal acts, tried to persuade a witness to perjure himself, and consistently blamed others for his conduct); *United States v. Wilson*, 2020 WL 4901714, at *6 (W.D. Wash. Aug. 20, 2020) (even if defendant had established extraordinary and compelling reasons to render him eligible for a reduction, court would deny the motion based on § 3553(a) factors—defendant was involved in large drug conspiracy and was personally involved in the distribution of kilogram quantities of cocaine); *United States v. Chandler*, 2020 WL 4596843, at *2 (E.D. Mich. Aug. 11, 2020) (compassionate release not warranted where defendant distributed large amounts of cocaine and heroin and obstructed justice during pendency of case).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for compassionate release (doc. #288) is hereby **denied**.

**IT IS SO ORDERED.**

Dated this 22nd day of October, 2020, at Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge
